**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

PEGGY JONES, LaRONDA
BLAKELY, MARSHA CORWIN,
JANET ENGELKEN, ROBIN
HARTKOPP, PAMM JOYNER-
AZBILL, JUDY KLIMESH, SHIRLEY
LONG, AMBER PLETSCH,
KATHLEEN PRICE, WILLIAM
STEVEN, VERNA SUNNES, and
SAUNDRA WEST,

         Plaintiffs,

vs.

DOLGENCORP, INC., and DOLLAR
GENERAL PARTNERS,

         Defendants.

No. C 10-3020-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING
DEFENDANTS' MOTION TO
STRIKE AND MOTION FOR
SUMMARY JUDGMENT**

————————————

**TABLE OF CONTENTS**

*I.  INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    *A.  Factual Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    *B.  Procedural Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*II.  MOTION TO STRIKE AND OBJECTIONS TO EVIDENCE* . . . . . . . . . . . 7
    *A.  Standards for Motion to Strike* . . . . . . . . . . . . . . . . . . . . . . . . . 7
    *B.  Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*III.  MOTION FOR SUMMARY JUDGMENT* . . . . . . . . . . . . . . . . . . . . . . 16
    *A.  Standards for Summary Judgment* . . . . . . . . . . . . . . . . . . . . . . 16
    *B.  Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

| | | |
|---|---|---|
| 1. | *The Fair Labor Standards Act Executive Exception* . . . . . . . | 19 |
| | a. | *Primary duty, 29 C.F.R. § 541.1(a) (2003)* . . . . . . . . | 21 |
| | | i. | *Percentage of time* . . . . . . . . . . . . . . . . . . . | 23 |
| | | ii. | *Importance of duties* . . . . . . . . . . . . . . . . . . | 25 |
| | | iii. | *Discretionary powers* . . . . . . . . . . . . . . . . . . | 28 |
| | | iv. | *Freedom from supervision* . . . . . . . . . . . . . . . | 31 |
| | | v. | *Salary and wages* . . . . . . . . . . . . . . . . . . . . | 33 |
| | b. | *Two or more employees, 29 C.F.R. § 541.1(b) (2003)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 34 |
| 2. | *Liquidated Damages* . . . . . . . . . . . . . . . . . . . . . . . . . . | 36 |

**IV. CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

# I.  INTRODUCTION

In this motion for summary judgment, I am required to determine whether a genuine issue of material fact exists regarding an allegation that the defendants Dollar General Partners and Dolgencorp, Inc. are nickel-and-dimeing their store managers, by claiming such employees are exempt under the Fair Labor Standards Act and, therefore, ineligible for overtime compensation.

## A.  Factual Background

This is a collective action by fourteen plaintiffs against Dollar General Partners ("Dollar General") and Dolgencorp, Inc. ("Dolgencorp"; collectively the "defendants"). Defendants have moved for summary judgment only against Plaintiff Pamm Joyner-Azbill ("Joyner"), who was employed by Dollar General from August 1998 until May 2003. Originally hired as a temporary clerk, Joyner was offered an assistant store manager position at the Waterloo, Iowa, Dollar General store after her temporary position expired.

In 1999, Joyner was promoted to store manager at the Dollar General store in Evansdale, Iowa. Joyner served as store manager there for four years, until she resigned in May of 2003.

Dollar General, owned by the co-defendant Dolgencorp, Inc., is a nationwide retail chain of discount, consumable goods, such as cleaning supplies, health and beauty aids, foods/snacks, housewares, toys, and basic apparel. Most of these goods are priced below ten dollars, with approximately twenty-five percent of merchandise priced at or below one dollar. As of 2003, Dollar General operated around 6,192 stores in twenty-seven states, with an average annual sales volume of $1,000,000 per store.

Management decisions within Dollar General's corporate structure are divided into three levels of hierarchy: the corporate headquarters; regional and district managers; and, the store manager. Corporate headquarters dictate many aspects of each Dollar General store. For example, corporate headquarters determines: the hours in the labor budget; the store's hours of operation; the merchandise shipped to the store; the layout of the store; where goods should be arranged in the store; and, how many of a particular item should be placed on each shelf. Furthermore, corporate headquarters issues detailed operating-procedures manuals to every store manager. These manuals provide instruction to store managers on how managers should handle: confronting an angry customer; answering the telephone; running the cash register; what items should be hung on a clipboard in the store's office; weather emergencies; and, cleaning the store floor. Store managers are not allowed to deviate from many of such instructions passed down from corporate headquarters.

The second level of hierarchy involves district managers, who supervise between fifteen to twenty-five stores in each district. District managers are expected to have a weekly office day, communicate with store managers by telephone, and visit each store

within their district at least once every four to six weeks. District managers strictly control the number of labor hours given to each store, and their approval is required before a store's labor budget is exceeded by the store manager. Additionally, district managers have the sole authority to promote an employee, give a pay raise, or terminate employment.

The third level of hierarchy within Dollar General's corporate structure concerns local store managers, like Joyner. Store managers typically supervise an assistant store manager, a lead clerk, and multiple store clerks. Joyner's Dollar General store had an average of seven to eight employees, of which four to five were clerks. In addition to supervising employees, store managers: maintain inventory levels; order merchandise; assign work to lower-level employees; schedule employees within the parameters of the labor budget; and, receive and implement directives issued from corporate headquarters. Store managers do not have the authority to terminate or promote employees, although they can provide recommendations to district managers who make the ultimate decision. Store managers also do not have the authority to: give an employee a pay raise; adjust an employee's initial rate of pay; set the store's hours of operation; change the store's locks; decide where merchandise is placed; choose the layout of the store; determine the labor budget; or, contract with outside vendors.

According to Joyner, she worked, on average, fifty-six to sixty-five hours a week. Joyner claims that only ten percent of this time was actually spent performing managerial duties in accordance with her job description. The other ninety percent of Joyner's time was spent performing manual-labor duties like those done by store clerks, such as stocking shelves, unloading trucks, sweeping the floor, cleaning the bathroom, changing light bulbs, hanging signs from the ceiling, clearing the parking lot, and running the cash register.

Joyner is the only salaried employee at her Dollar General store. As store manager, Joyner earned $440/week beginning in April 2001; $460/week beginning December 2001; $473.80/week beginning in April 2002; $500/week beginning in October 2002; and, $515/week beginning in April 2003. Joyner also earned an annual bonus every year that she was store manager. Such bonuses were based upon the profitability of her store, and Joyner was eligible to earn an annual bonus of up to ten percent of the store's net profit not to exceed 100% of her base salary. The assistant store manager was the second highest paid employee in Joyner's store, and earned approximately $7.47/hour or around $298.80 for a forty hour workweek. The assistant store manager was eligible to receive bonuses of up to three percent of the store's net profit, and each store clerk's bonus eligibility was capped at two percent.

## B. Procedural Background

On August 7, 2006, Joyner and hundreds of other plaintiffs collectively filed a Complaint and Jury Demand in the United States District Court, for the Northern District of Alabama. Their initial complaint was soon followed by a First Amended Complaint filed on August 9, 2006, and a Second Amended Complaint filed on September 5, 2006. In the Second Amended Complaint, plaintiffs claim defendants have a uniform policy and practice of consistently requiring managerial staff to work overtime without compensation. Plaintiffs also claim the vast majority of work hours are spent performing non-managerial job duties. Plaintiffs seek overtime compensation, an equal amount of liquidated damages, interest, attorneys' fees, and costs. Defendants answered the First and Second Amended Complaints on September 5, 2006 and September 19, 2006, respectively, and denied these allegations. On November 3, 2006, the United States District Court, for the Northern District of Alabama severed the cases of the plaintiffs whose claims were subject to the

jurisdiction of, and whose venue was proper in, federal courts located outside the State of Alabama. On March 30, 2010, the United States District Court, for the Northern District of Alabama transferred Joyner's case, and similarly situated plaintiffs, to the Northern District of Iowa.

On February 11, 2011, defendants filed a Motion for Summary Judgment. The defendants argue that Joyner's "claim for unpaid overtime under the Fair Labor Standards Act ("FLSA") fails because Dollar General can show, as a matter of law, that she is exempt from overtime under the 'executive exemption' of the FLSA, 29 U.S.C. § 213(a)(1)." (Docket no. 33, p. 1) Defendants also allege that Joyner falls within the "executive exemption" of the FLSA, because: Joyner was compensated on a salary basis at a rate of not less than $250 per week; Joyner's primary duty was management; and, Joyner regularly directed the work of two or more other full-time employees.

On March 17, 2011, Joyner filed a Response in Opposition to Defendants' Motion for Summary Judgment. Joyner argues that a question of fact for the jury exists regarding whether her primary duty was managerial-labor. Joyner claims she spent ninety percent of her time performing manual-labor duties, and, thus, her primary duties were not managerial in nature. Joyner also argues that Dollar General's supervision and policies prevented her from exercising discretion over the types of decisions contemplated by the FLSA regulations.

On March 24, 2011, the defendants filed a Motion to Strike and Objections to Evidence Offered in Opposition to Defendants' Motion for Summary Judgment. Defendants argue that forty-two exhibits the plaintiff attached in support of her Response in Opposition to Defendants' Motion for Summary Judgment, fail to satisfy the minimal evidentiary thresholds for admissibility and should not be considered as evidence. The defendants also filed, on March 24, 2011, their Reply in Support of Motion for Summary

Judgment. In their reply, the defendants argue that Joyner fails to demonstrate that any material fact is disputed. The defendants stress that Joyner's sworn testimony is evidence that she was in charge of her store, when she admitted that she was always managing her employees, even during the time when she allegedly performed manual labor tasks. Defendants also argue that, as a store manager, Joyner had the greatest impact on store profitability and that her success was dependent upon her store's overall profitability.

On April 8, 2011, Joyner filed a Response to Defendants' Motion to Strike and Objections to Evidence. Joyner argues that the exhibits are admissible, because several of these exhibits originate from a 2004 internal survey of Dollar General stores that Dollar General, itself, conducted. Joyner believes that the survey demonstrates the importance of the non-managerial duties Joyner performed to Dollar General, and, therefore, go towards the question of whether her primary duty to Dollar General was, in fact, managerial or manual-labor. Regarding news articles, monthly newsletters published by Dollar General, business memos, and performance evaluations, Joyner argues that such exhibits are either not offered for the truth of the matter asserted, or, fall under the applicable business records exception to the hearsay rule and are thereby relevant and admissible.

The defendants' Motion for Summary Judgment and Motion to Strike are now fully submitted, and I will turn now to an analysis of the legal issues presented.

## II. MOTION TO STRIKE AND OBJECTIONS TO EVIDENCE
### A. Standards for Motion to Strike

Rule 12 of the Federal Rules of Civil Procedure provides for a motion to strike, as follows:

> (f) Motion to Strike. The court may strike from a pleading an
> insufficient defense or any redundant, immaterial, impertinent,
> or scandalous matter. The court may act:
>> (1) on its own; or
>> (2) on motion made by a party either before
>> responding to the pleading or, if a response is
>> not allowed, within 21 days after being served
>> with the pleading.

Fed.R.Civ.P. 12(f).[1]

In ruling on a Rule 12(f) motion, the court "enjoy[s] liberal discretion," and its ruling is reviewed only for abuse of that discretion. *See BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir.2007); *Nationwide Ins. Co. v. Central Missouri Elec. Coop., Inc.*, 278 F.3d 742, 748 (8th Cir.2001); *Stanbury Law Firm v. IRS*, 221 F.3d 1059, 1063 (8th Cir.2000); *Chock v. Northwest Airlines, Inc.*, 113 F.3d 861, 863–64 n. 3 (8th Cir.1997). The rule embodies this discretion, because it is cast in permissive terms ("the court may act …") rather than mandatory terms. Fed.R.Civ.P. 12(f); *see also Stanbury*, 221 F.3d at 1063 ("Because the rule is stated in the permissive, however, it has always been understood that the district court enjoys 'liberal discretion' thereunder."). The Eighth Circuit Court of Appeals has also recognized that, "[d]espite this broad discretion … striking a party's pleadings is an extreme measure, and, as a result, we have previously held that '[m]otions to strike under Fed.R.Civ.P. 12(f) are viewed with disfavor and are infrequently granted.'" *Stanbury*, 221 F.3d at 1063 (quoting *Lunsford v. United States*, 570 F.2d 221, 229 (8th Cir.1977), in turn citing 5 Wright & Miller, Federal

---

[1] The language of Rule 12(f) was "restyled" by the 2007 Amendments, but, again, the changes were intended to be stylistic only. Fed.R.Civ.P. 12, advisory committee's note.

Practice and Procedure: Civil § 1380 at 783 (1969)); *accord BJC Health Sys.*, 478 F.3d at 917 (citing *Stanbury*). Applying these standards, the Eighth Circuit Court of Appeals has ruled that even matters that are not "strictly relevant" to the principal claim at issue should not necessarily be stricken, if they provide "important context and background" to claims asserted or are relevant to some object of the pleader's suit. *Id.*

## B. Analysis

The defendants' filed a Motion to Strike and Objections to Evidence regarding forty-two exhibits the plaintiff offered in opposition to the defendants' Motion for Summary Judgment. These exhibits include a 2004 Dollar General Survey pertaining to the operation of its stores, a periodical article, a Harvard Business School case study, Dollar General monthly newsletters, Dollar General business memorandums, and Dollar General performance evaluations. Under Rule 12(f) of the Federal Rules of Civil Procedure, a court may strike from a *pleading* an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. Under Rule 7(a) of the Federal Rules of Civil Procedure, "pleadings" are: "a complaint; an answer to a complaint; an answer to a counterclaim designated as a counterclaim; an answer to a crossclaim; a third-party complaint; an answer to a third-party complaint; and, if the court orders one, a reply to an answer." *Id.* Here, defendants are not seeking to strike matter from a pleading, but, instead, attempt to strike exhibits offered in opposition to the defendants' Motion for Summary Judgment. As a result, the defendants' Motion to Strike is improper under Rule 12(f) of the Federal Rules of Civil Procedure, and, consequently, denied. Nevertheless, I shall next consider the defendants' objections to the forty-two exhibits Joyner attached to her Response in Opposition to Defendants' Motion for Summary Judgment.

As a preliminary matter, I note that Rule 104 of the Federal Rules of Evidence provides, generally, that "[p]reliminary questions concerning . . . the admissibility of evidence shall be determined by the court. . . ." FED. R. EVID. 104. Such preliminary questions may depend upon such things as whether the factual conditions or legal standards for the admission of certain evidence have been met. *See id.*, Advisory Committee Notes, 1972 Proposed Rule. This rule, like the other rules of evidence, must be "construed to secure fairness in administration, elimination of unjustifiable expense and delay, and promotion of growth and development of the law of evidence to the end that truth may be ascertained and proceedings justly determined." FED. R. EVID. 102. I conclude that preliminary determination of the admissibility of evidence presented or challenged in the defendants' objection will likely serve the ends of a fair and expeditious presentation of issues to the jury.

The defendants base their objections frequently on the alleged irrelevance or prejudicial nature of certain challenged categories of evidence. Rule 401 of the Federal Rules of Evidence defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED. R. EVID. 401. Rule 402 provides that "[a]ll relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority" and that "[e]vidence which is not relevant is not admissible." FED. R. EVID. 402. Rule 403 provides for exclusion of even relevant evidence on various grounds, as follows:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or

by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

FED. R. EVID. 403.

The Eighth Circuit Court of Appeals has explained "prejudice" within the meaning of Rule 403 as follows:

> Under Rule 403, district courts have broad discretion to assess unfair prejudice, and are reversed only for an abuse of discretion. *United States v. Henderson*, 416 F.3d 686, 693 (8th Cir. 2005), *cert. denied*, 546 U.S. 1175, 126 S. Ct. 1343, 164 L. Ed. 2d 57 (2006). Rule 403 "does not offer protection against evidence that is merely prejudicial in the sense of being detrimental to a party's case. The rule protects against evidence that is unfairly prejudicial, that is, if it tends to suggest decision on an improper basis." *Wade v. Haynes*, 663 F.2d 778, 783 (8th Cir. 1981), *aff'd sub nom. Smith v. Wade*, 461 U.S. 30, 103 S. Ct. 1625, 75 L. Ed. 2d 632 (1983).

*United States v. Myers*, 503 F.3d 676, 681 (8th Cir. 2007); *United States v. Farrington*, 499 F.3d 854, 858-59 (8th Cir. 2007). The Advisory Committee Notes to Rule 403 explain that a decision on an "improper basis" is "commonly, though not necessarily, an emotional one." FED. R. EVID. 403, Advisory Committee Notes; *see also United States v. Jiminez*, 487 F.3d 1140, 1145 (8th Cir. 2007) (quoting this note); *United States v. Dierling*, 131 F.3d 722, 730-31 (8th Cir. 1997) (considering whether evidence was unfairly prejudicial, because it might lead to a decision on an improper basis, where it purportedly had no connection to the charged offense and revealed grisly or violent behavior that made the defendant appear "dangerous"). Unfairly prejudicial evidence has also been described as evidence that is "'so inflammatory on [its] face as to divert the jury's attention from the material issues in the trial.'" *United States v. Adams*, 401 F.3d 886, 900 (8th Cir. 2005) (quoting *United States v. Shoffner*, 71 F.3d 1429, 1433 (8th Cir.

1995)). The Advisory Committee's Notes to Rule 403 also explain that a determination on unfair prejudice should include consideration of the possible effectiveness or lack of effectiveness of a limiting instruction. FED. R. EVID. 403, Advisory Committee Notes; *see also United States v. Hawthorne*, 235 F.3d 400, 404 (8th Cir. 2000) (finding that relevance of evidence was not outweighed by any potential prejudice within the meaning of either Rule 404(b) or Rule 403 where the evidence was used for a limited purpose and the district court gave a limiting instruction).

Rule 403 also permits exclusion of relevant evidence on the basis of its potential for confusion of the issues. FED. R. EVID. 403. The Eighth Circuit Court of Appeals has explained, "'Confusion of the issues warrants exclusion of relevant evidence if admission of the evidence would lead to litigation of collateral issues.'" *Fireman's Fund Ins. Co. v. Thien*, 63 F.3d 754, 758 (8th Cir. 1995) (quoting *United States v. Dennis*, 625 F.2d 782, 796-97 (8th Cir. 1980)).

The defendants first object to all forty-two exhibits Joyner attached to her Response in Opposition to Defendants' Motion for Summary Judgment as irrelevant, improper, confusing, and prejudicial, under Federal Rules of Evidence 401-403. I deny the defendants objections on these grounds, and find that such evidence is relevant in having the tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

For instance, regarding Joyner's exhibits 1, 2, and 7-20, pertaining to a 2004 Dollar General Survey, this survey is highly relevant in determining whether the types of tasks performed by store employees, including the store manager, were primarily managerial or manual-labor duties. This survey is also non-prejudicial in that it was conducted by Dollar General to determine how time was spent in each of its stores by employees, a central question before the court.

12

Regarding Joyner's exhibits 4 and 35, pertaining to a business periodical and a Harvard Business School case study, I also find that such exhibits are relevant and nonprejudicial under FED. R. EVID. 401-403, and go towards the question of liquidated damages in determining Dollar General's state of mind in hiring store managers with the ability to perform large amounts of physical labor.

Regarding Joyner's exhibits 3, and 21-23, concerning the monthly newsletter issued by Dollar General to its employees, I again find such exhibits relevant and admissible under FED. R. EVID. 401-403. Dollar General's monthly newsletter discloses the policies of the company, and provides insight into the oversight it maintains over store employees — all relevant information on the question of discretion reserved to store managers.

I further find Joyner's exhibits 5 and 28, concerning business memos and selections from Dollar General's Standard Operating Procedures Manual, relevant and admissible under FED. R. EVID. 401-403. These documents go towards the question of whether Dollar General's policies encouraged store managers to primarily perform large amounts of manual labor versus managerial duties.

Additionally, Joyner's exhibit 24, an example of a performance evaluation given to an assistant store manager, is relevant and admissible in that it is the identical type of form used to evaluate the store manager. This evidence begs the question of whether the duties of a store manager were truly distinctive — even though the defendants claim a store manager's primary role is managerial and an assistant store manager's role involves more manual labor.

The defendants base their second round of objections on alleged hearsay and double hearsay under FED. R. EVID. 801-802. FED. R. EVID. 801, states: "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Furthermore, FED. R. EVID.

802 provides the Hearsay Rule, which provides: "Hearsay is not admissible except as provided by these rules or by other rules prescribed by the Supreme Court pursuant to statutory authority or by Act of Congress." Thus, any out of court statement offered to prove the truth of the matter asserted, falling outside one of the notable exceptions to the Hearsay Rule, is hearsay and will be inadmissible.

Defendants argue that the Dollar General Survey, including exhibits 1, 2, and 7-20, and, articles about Dollar General, Joyner's exhibits 4 and 35, are impermissible hearsay. I agree that these exhibits are inadmissible as classic hearsay, because they are out of court statements offered to prove the truth of the matter asserted and do not fall within any exception to the hearsay rule.[2] The defendants also assert that Joyner's exhibits 3, and 21-23, concerning the monthly newsletter issued by Dollar General to its employees, and, Joyner's exhibit 24, an example of a performance evaluation given to an assistant store manager, are hearsay. However, Fed. R. Evid. 803(6) provides the pertinent business records exception to hearsay.[3] This exception allows records to be admitted "if kept in the

<hr>

[2] Defendants further object to Joyner's exhibits 1, 2, 4, 7-20, and 35 as lacking foundation under Fed. R. Evid. 602, and exhibits 4 and 35 as lacking authentication under Fed. R. Evid. 901. As I have already determined that these exhibits are inadmissible as classic hearsay under Fed. R. Evid. 801-802, it is unnecessary for me to also determine their admissibility on the additional grounds of foundation and authentication.

[3] "Records of Regularly Conducted Activity. A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by certification that complies with Rule 902(11), Rule 902(12), or a statute permitting certification, unless the source of information or the method or circumstances of
(continued...)

course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report. . . ." FED. R. EVID. 803(6). Thus, I find that these exhibits are admissible under the business records exception to hearsay in that they were monthly newsletters and standard evaluations conducted in the regular practice of Dollar General's course of business.

Finally, the defendants object to Joyner's exhibit 24, an example of a performance evaluation given to an assistant store manager, as lacking foundation under Fed. R. Evid. 602.[4] The defendants argue that the exhibit is a performance review form of an individual that has no connection to Joyner's case. On the contrary, since this form was the same used by Dollar General to evaluate Joyner, I find that Joyner has personal knowledge of the matter. Exhibit 24 is therefore admissible upon the testimony by Joyner explaining this fact, including the reasoning behind offering a third party's evaluation form due to the inability of obtaining a clean version.[5]

---

[3] (…continued)
preparation indicate lack of trustworthiness. The term 'business' as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit." FED. R. EVID. 803(6).

[4] "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the witness' own testimony." FED. R. EVID. 602.

[5] I have concerns that the personal information of the non-party contained on Joyner's exhibit 24 may be an unnecessary violation of privacy rights. As such, I order Joyner to redact such portions of the exhibit containing the non-party's personal information.

Therefore in summary, Joyner's exhibits 1, 2, 4, 7-20, and 35 are inadmissible under the Hearsay Rule, FED. R. EVID. 801-802. Joyner's exhibits 3, 5, 21-23, 24, and 28 are admissible over the defendants' objections.

## III. MOTION FOR SUMMARY JUDGMENT

### A. Standards for Summary Judgment

Motions for summary judgment essentially "define disputed facts and issues and . . . dispose of unmeritorious claims [or defenses]." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 585 (2007) (internal quotation marks and citation omitted); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986) ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses. . . ."). Summary judgment is only appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no *genuine* issue of *material* fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c) (emphasis added); *see Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) ("Summary judgment is appropriate if viewing the record in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.").

A fact is *material* when it "'might affect the outcome of the suit under the governing law.'" *Johnson v. Crooks*, 326 F.3d 995, 1005 (8th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Thus, "the substantive law will identify which facts are material." *Anderson*, 477 U.S. at 248. An issue of material fact is *genuine* if it has a real basis in the record, *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), or when "'a reasonable jury could return a verdict for the nonmoving party'

on the question," *Woods*, 409 F.3d at 990 (quoting *Anderson*, 477 U.S. at 248); *see Diesel Machinery, Inc. v. B.R. Lee Indus., Inc.*, 418 F.3d 820, 832 (8th Cir. 2005) (stating genuineness depends on "whether a reasonable jury could return a verdict for the non-moving party based on the evidence").

Procedurally, the moving party bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue," *Hartnagel*, 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323), and demonstrating that it is entitled to judgment according to law. *See Celotex*, 477 U.S. at 323 ("[T]he motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied."). Once the moving party has successfully carried its burden under Rule 56(c), the nonmoving party has an affirmative burden to go beyond the pleadings and by depositions, affidavits, or otherwise, designate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Mosley v. City of Northwoods, Mo.*, 415 F.3d 908, 910 (8th Cir. 2005) ("The nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.'" (quoting *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995))).

As the Eighth Circuit Court of Appeals has explained,

> "On a motion for summary judgment, 'facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts.'" *Ricci v. DeStefano*, 129 S. Ct. 2658, 2677 (2009) quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007) (internal quotations omitted). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson*

> *Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts," and must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U. S. 574, 586-87 (1986). "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" *Ricci*, 129 S. Ct. at 2677, quoting *Matsushita*, 475 U.S. at 587.

*Torgerson v. City of Rochester*, --- F.3d ---, 2011 WL 2135636 (June 1, 2011) (*en banc*). I will now apply these standards to defendants's Motion for Summary Judgment.

## B. Analysis

The defendants argue that Joyner is exempt from the Fair Labor Standards Act ("FLSA") requirement of providing overtime compensation because she was a salaried manager at Dollar General. Regarding overtime compensation, the FLSA dictates that:

> no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1). Thus, "[a]s a general rule, the FLSA requires employers to pay overtime compensation to employees for hours worked in excess of a forty-hour work week." *Auer v. Robbins*, 65 F.3d 702, 709-710 (8th Cir. 1995); *see Kanatzer v. Dolgencorp*, 2010 WL 2720788, *2 (E.D.Mo. 2010). However, the FLSA also provides

an exception to the overtime compensation requirement, for "any employee employed in a bona fide *executive*, administrative, or professional capacity. . . ." 29 U.S.C. § 213(a)(1) (emphasis added).

## 1. *The Fair Labor Standards Act Executive Exception*

To assist the courts in determining whether an employee falls within the executive exception to the FLSA, the United States Department of Labor has listed several factors to provide guidance. These factors include any employee:

> (a) Whose primary duty consists of the management of the enterprise in which he is employed or of a customarily recognized department or subdivision thereof; and
> (b) Who customarily and regularly directs the work of two or more other employees therein; and
> (c) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring or firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight; and
> (d) Who customarily and regularly exercises discretionary powers; and
> (e) Who does not devote more than 20 percent, or, in the case of an employee of a retail or service establishment who does not devote as much as 40 percent, of his hours of work in the workweek to activities which are not directly and closely related to the performance of the work described in paragraphs (a) through (d) of this section: Provided, That this paragraph shall not apply in the case of an employee who is in sole charge of an independent establishment or a physically separated branch establishment, or who owns at least a 20-percent interest in the enterprise in which he is employed; and
> (f) Who is compensated for his services on a salary basis at a rate of not less than $155 per week (or $130 per week, if employed by other than the Federal Government in Puerto

> Rico, the Virgin Islands, or American Samoa), exclusive of
> board, lodging, or other facilities. . . .

29 C.F.R. § 541.1 (2003).

This regulation is "simplified" by an additional provision in subsection (f), which states:

> Provided, That an employee who is compensated on a salary
> basis at a rate of not less than $250 per week (or $200 per
> week, if employed by other than the Federal Government in
> Puerto Rico, the Virgin Islands or American Samoa), exclusive
> of board, lodging, or other facilities, and whose primary duty
> consists of the management of the enterprise in which the
> employee is employed or of a customarily recognized
> department or subdivision thereof, and includes the customary
> and regular direction of the work of two or more other
> employees therein, shall be deemed to meet all the
> requirements of this section.

29 C.F.R. § 541.1 (2003). In other words, employees who earn more than $250 per week need satisfy only subsections (a) and (b) of 29 C.F.R. § 541.1 (2003), the so-called "short test," whereas employees who earn less than $250 per week must satisfy all five subsections (a)-(e) of 29 C.F.R. § 541.1 (2003), the so-called "long test." *See Murray v. Stuckey's, Inc.*, 939 F.2d 614, 617 (8th Cir. 1991).

Defendants argue that the short test is the appropriate standard in this case, in light of the fact that Joyner earned more than $250 per week. Defendants further argue that because Joyner's employment satisfies subsections (a) and (b) of 29 C.F.R. § 541.1 (2003), they should be entitled to summary judgment as a matter of law. While I recognize that the short test is the appropriate standard in light of Joyner's salary,[6] I also

---

[6] As store manager, Joyner earned $440/week beginning in April 2001; $460/week
(continued...)

note that "the application of an exemption under the Fair Labor Standards Act is a matter of affirmative defense on which the employer has the burden of proof." *Hertz v. Woodbury County, Iowa*, 566 F.3d 775, 783 (8th Cir. 2009) (*quoting Corning Glass Works v. Brennan*, 417 U.S. 188, 196-97 (1974)). "This exemption is 'narrowly construed in order to further Congress' goal of providing broad federal employment protection.'" *Spinden v. GS Roofing Products Co., Inc.*, 94 F.3d 421, 426 (8th Cir. 1996) (*quoting McDonnell v. City of Omaha, Neb.*, 999 F.2d 293, 295 (8th Cir.1993), cert. denied, 510 U.S. 1163, 114 S.Ct. 1188, 127 L.Ed.2d 538 (1994)). The employer must prove that this exemption applies by "demonstrat[ing] that their employees fit 'plainly and unmistakably within the exemption's terms and spirit.'" *Spinden,* 94 F.3d at 426 (*quoting McDonnell*, 999 F.2d at 296 (*quoting Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392, 80 S.Ct. 453, 456, 4 L.Ed.2d 393 (1960)). Therefore, I will address subsections (a) and (b) of 29 C.F.R. § 541.1 (2003), in turn, to determine if the defendants have met their burden of proving that no genuine issue of material fact exists because Joyner was an executive employee as defined by the FLSA.

### a.    *Primary duty, 29 C.F.R. § 541.1(a) (2003)*

The defendants argue that Joyner's employment satisfies the "primary duty" test based on the relevant factors, and, therefore, no question of material fact exists. The United States Department of Labor has explained that an employee employed in a bona fide executive capacity includes any employee, "[w]hose primary duty consists of the management of the enterprise in which he is employed or of a customarily recognized

---

[6](…continued)
beginning December 2001; $473.80/week beginning in April 2002; $500/week beginning in October 2002; and, $515/week beginning in April 2003.  (Docket no. 33-2, p. 7; Docket no. 37-2, p. 6)

department or subdivision thereof. . . ." 29 C.F.R. § 541.1(a) (2003). The United States Department of Labor has specifically defined an employee's "primary duty," accordingly:

> A determination of whether an employee has management as his primary duty must be based on all the facts in a particular case. The amount of time spent in the performance of the managerial duties is a useful guide in determining whether management is the primary duty of an employee. In the ordinary case it may be taken as a good rule of thumb that primary duty means the major part, or over 50 percent, of the employee's time. Thus, an employee who spends over 50 percent of his time in management would have management as his primary duty. Time alone, however, is not the sole test, and in situations where the employee does not spend over 50 percent of his time in managerial duties, he might nevertheless have management as his primary duty if the other pertinent factors support such a conclusion. Some of these pertinent factors are the relative importance of the managerial duties as compared with other types of duties, the frequency with which the employee exercises discretionary powers, his relative freedom from supervision, and the relationship between his salary and the wages paid other employees for the kind of nonexempt work performed by the supervisor. For example, in some departments, or subdivisions of an establishment, an employee has broad responsibilities similar to those of the owner or manager of the establishment, but generally spends more than 50 percent of his time in production or sales work. While engaged in such work he supervises other employees, directs the work of warehouse and delivery men, approves advertising, orders merchandise, handles customer complaints, authorizes payment of bills, or performs other management duties as the day-to-day operations require. He will be considered to have management as his primary duty.

29 C.F.R. § 541.103 (2003). In simpler language, "the amount of time spent on managerial duties is a relevant, but not dispositive, factor." *Murray*, 939 F.2d at 618.

Other factors must also be taken into account, and the primary duty determination "must be based on all the facts in a particular case." *Id.* The Eighth Circuit Court of Appeals has described all factors that must be taken into account, as follows:

> [i]n the ordinary case it may be taken as a good rule of thumb that primary duty means the major part, or over 50 percent, of the employee's time. Thus, an employee who spends over 50 percent of his time in management would have management as his primary duty. Time alone, however, is not the sole test, and in situations where the employee does not spend over 50 percent of his time in managerial duties, he might nevertheless have management as his primary duty if the other pertinent factors support such a conclusion. Some of these pertinent factors are the relative importance of the managerial duties as compared with other types of duties, the frequency with which the employee exercises discretionary powers, his relative freedom from supervision, and the relationship between his salary and the wages paid other employees for the kind of nonexempt work performed by the supervisor.

*Murray*, 939 F.2d at 618. Thus, I will first consider what percentage of time Joyner spent performing managerial duties, and then move on to the other factors, in my determination of whether a genuine issue of material fact exists concerning Joyner's primary duty at Dollar General.

### i. *Percentage of time*.

Defendants dispute Joyner's claim that, as store manager, she spent ninety percent of her time performing manual labor tasks. Defendants argue that Joyner has not offered any evidence to support this claim, and, even if Joyner spent more than fifty percent of her time on non-managerial tasks, this does not automatically define her primary duty as something other than management.

FLSA regulations state that, "[i]n the ordinary case it may be taken as a good rule of thumb that primary duty means the major part, or over 50 percent, of the employee's time." 29 C.F.R. § 541.103. Joyner argues that the time she spent on exempt duties was "very, very minimal" (Docket 37, p. 10), and supports her estimate of ninety percent by listing several manual labor activities that consumed her time, such as stocking the shelves, sweeping the floor, cleaning the bathroom, changing light bulbs, hanging signs from the ceiling, and clearing the parking lot. Joyner argues that none of these duties were listed in her job description as store manager, and the reason she had to perform them is because she was often the only employee present in the store. Joyner points out that even if she was fortunate to have an additional employee, she still was unable to delegate manual labor duties because the other employee was needed to run the cash register.

Defendants dispute Joyner's ninety percent estimate, yet fail to offer an alternative backed up with evidence. The United States Supreme Court and the Eighth Circuit Court of Appeals have both held that the amount of time an employee spends working, either on exempt or non-exempt duties, is a question of fact. *See Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714 (1986); *Spinden v. GS Roofing Products Co., Inc*. 94 F.3d 421, 426 (8th Cir. 1996); *see also Kanatzer*, 2010 WL 2720788 at *3. Thus, I find that a genuine issue of material fact exists on the question of what percentage of time Joyner spent as a store manager performing non-exempt duties.

While I have found that such a question of fact exists, this factor is not controlling under the FLSA regulations. The Eighth Circuit Court of Appeals has noted that "'the person 'in charge' of a store has management as his primary duty, even though he spends the majority of his time on non-exempt work and makes few significant decisions." *Murray*, 939 F.2d at 617 (*quoting Donovan v. Burger King Corp.*, 672 F.2d 221, 227 (1st Cir. 1982)). On the other hand, I also recognize that being "in charge" may be in title

only, as courts have found "[a]n employee is not automatically an exempt executive merely because she is labeled a 'manager'. . . ." *Kanatzer v. Dolgencorp, Inc.*, 2010 WL 2720788, *2 (E.D. Mo. 2010); *see Ale v. Tennessee Valley Authority*, 269 F.3d 680, 691 (6th Cir. 2001) ("The words 'in charge' are not a magical incantation that render an employee a bona fide executive regardless of his actual duties."). Thus, I must consider the remaining factors outlined by the United States Department of Labor to determine whether Joyner is exempt from the FLSA's overtime provisions as a matter of law.[7]

### ii.    *Importance of duties*.

The defendants argue that Joyner's managerial duties at Dollar General were more important to the company than her non-managerial duties. The United States Department of Labor defines exempt managerial duties, as follows:

> (a) In the usual situation the determination of whether a particular kind of work is exempt or nonexempt in nature is not difficult. In the vast majority of cases the bona fide executive employee performs managerial and supervisory functions which are easily recognized as within the scope of the exemption.
>
> (b) For example, it is generally clear that work such as the following is exempt work when it is performed by an employee in the management of his department or the

---

[7] I have reviewed the examples submitted by defense counsel of Dollar General cases from other districts. While instructive, none are determinative. On the contrary, I note a strikingly similar case before another district court in the Eighth Circuit, *Kanatzer v. Dolgencorp, Inc.*, 2010 WL 2720788 (E.D. Mo. 2010). In that opinion, the court recognized that while both sides provided summary judgment decisions (granting and denying) Dollar General cases from other districts, "[t]he decision requires an individualized inquiry, and while the cases provided are somewhat helpful, none is determinative for [the plaintiff's] case." *Kanatzer*, 2010 WL 2720788 at *3. I concur with this finding, and have likewise conducted an individualized inquiry into Joyner's situation at Dollar General.

supervision of the employees under him: Interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing their work; maintaining their production or sales records for use in supervision or control; appraising their productivity and efficiency for the purpose of recommending promotions or other changes in their status; handling their complaints and grievances and disciplining them when necessary; planning the work; determining the techniques to be used; apportioning the work among the workers; determining the type of materials, supplies, machinery or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety of the men and the property.

29 C.F.R. § 541.102.

Defendants stress that many of the examples cited in the FLSA regulations above, were specifically included in Joyner's store manager job description and are, therefore, evidence of primary importance. These examples include her being ultimately responsible for: interviewing, selecting, and hiring employees; training and counseling employees; assigning work hours and schedules; ensuring that the store was profitable, clean, and fully-stocked; preparing merchandise orders; evaluating employee performance; and, recommending disciplinary measures and promotions to her district manager. Defendants also maintain that, as store manager, Joyner was held accountable for ensuring that her store was profitable — a matter of principal concern to them. Finally, the defendants argue that no matter what task Joyner chose to accomplish at any given time in her store, as store manager she was exclusively responsible for assigning tasks to all employees in the store, including herself. As manager, she made those decisions based on what she deemed to be in the best interest of her store, which is a managerial decision, even if it resulted in her performing manual labor.

Joyner refutes these contentions by the defendants, arguing that it is not a managerial "choice" to perform manual labor tasks — if you are the only employee present in the store. Joyner states this frequent occurrence was the result of a lean-store staffing model dictated by corporate headquarters, and too-few labor hours mandated by her district manager. Joyner further argues that if her managerial duties were truly of primary importance, the defendants should have allotted more labor hours to the store so that Joyner could spend less time performing manual labor and more time on management.

Joyner also disputes whether the duties listed on her manager's job description were of primary importance to Dollar General, because she was not allowed to perform them to the full extent contemplated by 29 C.F.R. § 541.102. For example, Joyner argues that she: was prohibited from promoting store employees; was curtailed in assigning work schedules because of the labor budget mandated by her district manager; was not allowed to hire a full-time key-carrying employee; spent a "very, very minimal" amount of time training staff (Docket no. 37-2, p. 8); had little control over the scheduling process because she had no input over the store's labor budget; and, was not permitted to discipline or terminate a worker's employment (authority solely reserved to the district manager). Finally, Joyner maintains that such factual disputes over the relative importance of duties, especially in her situation where she spent the majority of her time performing manual labor, should go to the jury and not be decided by summary judgment.

Courts have held that "the relative importance of an employee's exempt and non-exempt duties — is determined by comparing how valuable the employee's exempt activities are to the employer versus how valuable the employee's non-exempt activities are to the employer." *Kanatzer*, 2010 WL 2720788 at *3; *see Thomas v. Speedway SuperAmerica, L.L.C.*, 506 F.3d 496, 505-6 (6th Cir. 2007). In other words, a question to be asked is: how long would Joyner's Dollar General store successfully last if she only

performed managerial duties versus manual labor? The answer to this question is not clear from the record. While it is true that Joyner was responsible, as a store manager, for ensuring the store's profitability, she was also responsible for performing a substantial amount of the manual labor necessary to ensure its profitability — the same manual labor performed by a store clerk. I additionally note that Joyner was sent to other Dollar General stores to help out not for her managerial skills, but for her manual labor, which included stocking, recovering, and purging the backroom. Thus, this is another example of a factual dispute in the record in attempting to ascertain what the defendants truly valued in a store manager. Consequently, the defendants have failed to meet their burden of establishing no genuine issue of material fact on the question of whether Joyner's managerial duties were more important to the defendants than her non-managerial duties.

### iii.  *Discretionary powers*.

I now turn to whether any genuine issue of material fact exists regarding whether Dollar General prevented Joyner from frequently exercising discretion as store manager. The defendants argue that, as the highest store-level supervisory personnel assigned to her store, Joyner exercised discretion on a daily basis and in numerous significant ways. This included: selecting, evaluating, and interviewing job applicants; preparing the store schedule and assigned work; ordering merchandise for her store; determining whether employee misconduct merited formal counseling and/or written discipline; handling customers caught shoplifting; ensuring high quality customer service; determining which damaged merchandise was saleable, whether it should be marked down, and the amount of the discount. Defendants argue that Joyner's situation is analogous to an Eighth Circuit Court of Appeal's decision holding that even though a store manager reports to a distant regional manager, the store manager need not have "ultimate" authority for all managerial

decisions in order to be exempt from the FLSA. *Murray*, 939 F.2d 614, 619 (8th Cir. 1991).

The United States Department of Labor defines "exercises discretionary powers," as follows:

> (a) Section 541.1(d) requires that an exempt executive employee customarily and regularly exercise discretionary powers. A person whose work is so completely routinized that he has no discretion does not qualify for exemption.
> (b) The phrase "customarily and regularly" signifies a frequency which must be greater than occasional but which, of course, may be less than constant. The requirement will be met by the employee who normally and recurrently is called upon to exercise and does exercise discretionary powers in the day-to-day performance of his duties. The requirement is not met by the occasional exercise of discretionary powers.

29 C.F.R. § 541.107. It is clear from the record, and as noted by the defendants, Joyner did exercise some discretion as store manager. However, the record is unclear whether such discretionary authority exhibited by Joyner was "occasional," or "day-to-day" as required by 29 C.F.R. § 541.107. The record also provides evidence of significant areas where Joyner had absolutely no discretion, even in areas specifically noted by the FLSA regulations as reserved for management. *See* 29 C.F.R. § 541.102. For example, Joyner had no discretion over allocating the store's labor-budget, which significantly influenced her assigning work hours to her staff. Likewise, Joyner had no discretion over the store's hours of operation, merchandise shipped to the store, the layout of the store, where goods should be arranged, and, how many of a particular item should be placed on each shelf. *See Kanatzer*, 2010 WL 2720788 at *4 (finding that although the plaintiff does perform some of the listed activities in the job description for store manager at Dollar General, "her

29

discretion in these activities is substantially limited by company policies and the oversight of her supervisors.").

There is also a factual dispute between the parties regarding the extent of Joyner's discretion to hire, promote, or discipline personnel at her Dollar General store. The United States Department of Labor clarifies such management authority, explaining:

> Section 541.1 requires that an exempt executive employee have the authority to hire or fire other employees or that his suggestions and recommendations as to hiring or firing and as to advancement and promotion or any other change of status of the employees who he supervises will be given particular weight. Thus, no employee, whether high or low in the hierarchy of management, can be considered as employed in a bona fide executive capacity unless he is directly concerned either with the hiring or the firing and other change of status of the employees under his supervision, whether by direct action or by recommendation to those to who the hiring and firing functions are delegated.

29 C.F.R. § 541.106 (2003). Joyner has admitted that she was responsible for taking applications, reviewing applications, interviewing job applicants, checking references, selecting, and hiring certain employees, in accordance with a labor budget furnished by her district manager. However, Joyner was not permitted to hire a full-time, key-carrying employee without the district manager's approval. Joyner also did not have sole discretion to promote an employee — such decisions were ultimately decided by the district manager. Nevertheless, Joyner was responsible for evaluating the performance of her employees, which had an impact on whether an employee was eligible for promotion. Joyner was also responsible for alerting her district manager to potential problems with her staff and made termination recommendations to the district manager as to whether an employee should

remain employed. Nevertheless, the power to promote or terminate an employee's employment at Dollar General was solely reserved to the district manager, not Joyner.

There is also a question as to how severely Dollar General's corporate headquarters limited Joyner's discretion through detailed operating-procedures manuals issued to every store manager. The Eighth Circuit Court of Appeals determined in *Murray,* that "the manager of a local store in a modern multi-store organization has management as his or her primary duty even though the discretion usually associated with management may be limited by the company's desire for standardization and uniformity." *Id.* at 619. However, this is distinguishable from Joyner's situation, because Dollar General's manuals not only dictated uniform store layout and hours of operation, but also provided detailed instruction for how store managers should handle numerous day-to-day situations, such as: confronting an angry customer; answering the telephone; running the cash register; what items should be hung on a clipboard in the store's office; handling weather emergencies; and, cleaning the store floor. The store manager was not allowed to deviate from many of such decisions passed down from corporate headquarters.

Thus, I recognize that under Eighth Circuit Court of Appeal's precedent in *Murray*, 939 F.2d at 619, Joyner need not have "ultimate" authority for all managerial decisions in order to be exempt from the FLSA. Nontheless, I still find that a significant question of material fact exists concerning whether Dollar General's policies prevented Joyner from frequently exercising discretion "day-to-day" as required under 29 C.F.R. § 541.107.

### iv.    *Freedom from supervision.*

Defendants argue that, as the highest ranking employee in her store, Joyner was relatively free from supervision and therefore an exempt executive employee as a matter of law. Defendants point out that Joyner's district manager visited her store infrequently, once every three to four months, and only to inspect the store or help prepare for a high-

level executive's visit. Aside from these visits, the defendants argue that Joyner only spoke with her district manager once every two weeks by telephone to discuss payroll issues. Defendants further argue that Joyner's situation at Dollar General was no different from that of the store manager's in *Murray*, where the court found the store manager free from supervision when the regional manager periodically visited the store and communicated by telephone. *Murray*, 939 F.2d at 616.

First and foremost, there is a factual dispute between the parties over the number of times the district manager visited Joyner's store, and, consequently, the level of supervision Joyner was freely allowed to maintain over her staff. Defendants claim that the district manager visited once every three to four months. However, Joyner claims district managers were expected to visit each store within their district at least once every four to six weeks — and that her district manager visited her store approximately once per month. Other questions linger over the level of direct supervision district managers maintained over store managers. For instance, although Joyner supervised employees at her store, she was not allowed to promote, discipline, or fire an employee. Joyner was free to supervise her employee's shifts, however, such shifts were significantly affected by the number of labor hours in the budget as dictated by corporate headquarters and her district manager.

In *Kanatzer*, which I find analogous, the district court distinguished *Murray*, 939 F.2d 614, by noting that while an employee may be considered exempt even though she is subject to heavy supervision, nevertheless, "the record [did] not resolve the question of how frequently the district manager remotely monitors [the plaintiff's] activities or what the monitoring entails, and does not identify whether this supervision is related to [the plaintiff's] exempt or non-exempt duties." *Kanatzer*, 2010 WL 2720788 at *5. I concur with this assessment in the case at hand, and find that the extent of Dollar General's direct

supervision of Joyner remains in dispute and defendants are, therefore, not entitled to judgment as a matter of law.

> **v.** ***Salary and wages.***

The final factor provided by the United States Department of Labor in determining an employee's "primary duty," concerns "the relationship between his salary and the wages paid other employees for the kind of nonexempt work performed by the supervisor." 29 C.F.R. § 541.103 (2003). Defendants argue that the record is devoid of a factual question on this issue, because Joyner earned substantially more than any other store employee. As evidence, the defendants compare Joyner's weekly salary with her assistant store manager's, a difference ranging from: $425/week for Joyner versus $280/week for her assistant store manager in March of 2001; to, $515/week for Joyner versus $298.80/week for her assistant store manager in April of 2003. The defendants stress that this difference doesn't even account for the annual bonuses Joyner received, of which her assistant store manager was only eligible to earn less than one-third of the bonus totals Joyner received.

Joyner maintains that before making the salary and wage comparison under 29 C.F.R. § 541.103 (2003), her weekly salary should be converted to an hourly wage based on the number of hours she actually worked. Joyner argues that this would give her an effective hourly pay rate of $6.54 to $7.59 an hour in March 2001; and, $7.92 to $9.20 an hour in April 2003. Meanwhile, Joyner's assistant store manager earned between $7 and $7.47 an hour. Thus, Joyner earned at most $2.20 more per hour between March 2001-April 2003, and, at times, Joyner even earned less than her assistant store manager.

The United States Department of Labor regulations do not provide guidance on this matter. However, Joyner's calculation method is utilized by relevant circuit court cases in the Sixth and Eleventh Circuits: *Thomas v. Speedway SuperAmerica, L.L.C.*, 506 F.3d

496, 508-09 (6th Cir. 2007); and, *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1257-58 (11th Cir. 2008). In *Thomas*, the court held that the store manager's salary equated to "a significant amount — approximately thirty percent-more than the hourly wages paid to other employees for the kind of nonexempt work performed by her." *Thomas*, 506 F.3d at 509 (*citing Moore v. Tractor Supply Co.*, 352 F.Supp.2d 1268, 1278 (S.D.Fla. 2004) (stating that the fourth factor has been found to weigh in favor of the employer where the plaintiff's "salary was 42 percent higher than the weekly salary of the highest paid associate").

Conversely, in *Morgan,* the court found that a two or three dollar difference in pay between store managers and assistant managers, consisted of a "relatively small difference," and it was appropriate for the jury to consider these salary figures. *Morgan*, 551 F.3d. at 1271. Joyner argues that using her calculations, she earned at most $2.20 more per hour than her assistant store manager, and, therefore, under *Morgan's* analysis this is a relatively small difference. *Id.* at 1271. At the same time, the defendants contend that by also using Joyner's math, she earned thirty-two percent more than her assistant store manager, and, thus, under *Thomas,* she qualifies for exempt employee status. *Id.* at 509. Consequently, at this time, I find that a reasonable jury could conclude either way: that Joyner did or did not earn "substantially more" than other employees. Therefore, a material issue of fact exists on the question of Joyner's wages compared to other employees at Dollar General.

### b.    *Two or more employees, 29 C.F.R. § 541.1(b) (2003)*

Defendants argue that there is no dispute whether Joyner regularly directed the work of two or more employees. Under 29 C.F.R. § 541.1(b) (2003), "[t]he term employee employed in a bona fide executive capacity . . . shall mean any employee: (b) who

customarily and regularly directs the work of two or more other employees therein. . . ."

*Id.* The United States Department of Labor further explains,

> (a) An employee will qualify as an "executive" under § 541.1 only if he customarily and regularly supervises at least two full-time employees or the equivalent. For example, if the "executive" supervises one full-time and two part-time employees of whom one works morning and one, afternoons; or four part-time employees, two of whom work mornings and two afternoons, this requirement would be met.
> (b) The employees supervised must be employed in the department which the "executive" is managing.
> (c) It has been the experience of the divisions that a supervisor of a few as two employees usually performs nonexempt work in excess of the general 20-percent tolerance provided in § 541.1.

29 C.F.R. § 541.105 (2003).

In this case, as store manager, Joyner supervised an assistant store manager, a lead clerk, and multiple store clerks. (Docket no. 33-2, p. 2) Joyner's store had an average of seven to eight employees, of which approximately half were clerks, and all were paid hourly. (Docket no. 33-2, p. 2, 8) Joyner has pointed out that many days she was often the only employee in the store, or one of just two employees in the store, and that most store employees were part-time employees. (Docket no. 37-1, p. 13; Docket no. 37-2, p. 11) Nevertheless, it is clear from the record that Joyner regularly directed the work of two or more employees or the equivalent, whether it be the assistant store manager or a lead clerk, and multiple store clerks. Therefore, I hold that no genuine issue of material fact exists on the question of whether Joyner regularly directed the work of two or more employees under 29 C.F.R. § 541.1(b) (2003).

Overall, while it is clear from the record that Joyner regularly directed the work of two or more employees, the defendants failed to meet their burden of satisfying the

"primary duty" test based on all the relevant factors under 29 C.F.R. § 541.103 (2003). Thus, the defendants are not entitled to summary judgment on this matter because a question of material fact remains concerning whether Joyner qualified as a bona fide executive employee under the FLSA.

### 2.    *Liquidated Damages*

The defendants argue they are entitled to summary judgment on Joyner's claim for liquidated damages[8] because Dollar General acted in good faith in classifying Joyner as an exempt employee.  As evidence of their good faith, they cite eleven final judgments finding store managers exempt as a matter of law. (Docket no. 33-1, p. 24)  Furthermore, defendants note that Dollar General has taken affirmative compliance measures concerning its exemption classification, by conducting store manager surveys to determine what the managers actually believed their primary duties were.

Under the FLSA, successful plaintiffs may recover from an employer "their unpaid minimum wages, or their unpaid overtime compensation ... and ... an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).  Additionally, successful plaintiffs may recover a "reasonable attorney's fee to be paid by the defendant, and costs of the action."  *Id*.  "An award of liquidated damages is 'intended in part to compensate employees for the delay in payment of wages owed under the FLSA[.]'" *Braswell v. City of El Dorado, Ark.*, 187 F.3d 954, 957 (8th Cir. 1999) (*quoting Hultgren v. County of Lancaster*, 913 F.2d 498, 508-09 (8th Cir.1990).  "An award of liquidated damages under

---

[8] "The term 'liquidated damages' in the Fair Labor Standards Act is 'something of a misnomer' because it is not a sum certain amount determined in advance, rather it is 'a means of compensating employees for losses they might suffer by reason of not receiving their lawful wage at the time it was due.'" *Broadus v. O.K. Industries, Inc.*, 226 F.3d 937, 943 (8th Cir. 2000) *(quoting Reich v. Southern New England Telecommunications Corp.*, 121 F.3d 58, 70 (2nd Cir.1997)).

36

section 216(b) is mandatory unless the employer can show good faith and reasonable grounds for believing that it was not in violation of the FLSA." *Id.*; *citing Hultgren,* 913 F.2d at 509; *see also Joiner v. City of Macon*, 814 F.2d 1537, 1539 (11th Cir.1987) ("the district court's decision whether to award liquidated damages does not become discretionary until the employer carries its burden of proving good faith. In other words, liquidated damages are mandatory absent a showing of good faith."). Thus, "the employer bears the burden of proving both good faith and reasonableness, 'but the burden is a difficult one, with double damages being the norm and single damages the exception.'" *Chao v. Barbeque Ventures, L.L.C.*, 547 F.3d 938, 941-942 (8th Cir. 2008) (*quoting Herman v. RSR Sec. Servs. Ltd.,* 172 F.3d 132, 142 (2d Cir.1999).

The defendants argue that evidence of good faith is demonstrated by courts that have already found Dollar General store managers exempt as a matter of law. On the other hand, there are more recent examples where a Dollar General store manager was found *not* to be exempt as a matter of law. *See Kanatzer*, 2010 WL 2720788 (E.D. Mo. 2010); *Myrick v. Dolgencorp*, 2010 WL 146874 (M.D. Ga. 2010); *Hale v. Dolgencorp, Inc*. 2010 WL 2595313 (W.D. Va. 2010). Thus, just because a court held one way and another differently, is not conclusive evidence that Dollar General acted in good faith. This instead demonstrates a question of fact. Consequently, I find defendants' arguments unpersuasive on the question of whether they acted in good faith by withholding Joyner's overtime compensation.

Defendants further argue that Dollar General has taken affirmative compliance measures with respect to its exemption classification, by conducting store manager surveys to determine what the managers actually believed their primary duties were at Dollar General. "The 'good faith' requirement is a subjective standard where the employer must establish 'an honest intention to ascertain and follow the dictates of the FLSA.'" *Chao*, 547

F.3d at 942 (*quoting Hultgren*, 913 F.2d at 509). "To carry his burden, a defendant employer must show that he took affirmative steps to ascertain the Act's requirements, but nonetheless, violated its provisions." *Id.* (*quoting Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896, 908 (3d Cir.1991). However, as Joyner points out, a serious question of fact remains whether such surveys were flawed and required store managers to adjust their responses in order to cast Dollar General in a more favorable light, and the extent of the survey directly pertaining to a store manager's primary duty factors. Thus, I find that the defendants have not met their difficult burden of proving both good faith and reasonableness, because a reasonable jury could find that Dollar General intentionally classified its store managers as exempt to save "a dollar" by withholding overtime compensation.

## IV.  CONCLUSION

Therefore, the defendants' Motion to Strike and Motion for Summary Judgment are denied, as follows:

1.     The Motion to Strike is **denied**, because the defendants' motion is improper under Rule 12(f) of the Federal Rules of Civil Procedure;

2.     The Motion for Summary Judgment is **denied** as to the defendants claim for executive exemption under the FLSA, because a reasonable jury could find that Joyner's primary duty was manual labor at Dollar General.

3.     The Motion for Summary Judgment is **denied** as to the defendants' claim regarding liquidated damages, because a reasonable jury could find that Dollar General intentionally classified its store managers as exempt to withhold overtime compensation.

**IT IS SO ORDERED.**

**DATED** this 8th day of June, 2011.


_____
MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA